# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. TERRY JACOBS, | Case No. 1:10-cv-536 Bertelsman, J. |
| Plaintiff, | Bowman, M.J. |
| v. | |
| LAMBDA RESEARCH, INC., et al., | |
| Defendants. | |

## REPORT AND RECOMMENDATION

**I. Background**

Plaintiff/Relator Terry Jacobs (hereinafter "Relator" or "Jacobs") filed this federal lawsuit through counsel, pursuant to the False Claims Act, just two months after an Ohio state-court jury determined that Jacobs had stolen trade secrets from his former employer, Lambda Research, and ordered him to pay $9.4 million in damages and attorney's fees. On February 6, 2013, the Ohio Court of Appeals affirmed the state court judgment against Jacobs. *Lambda Research, Inc. v. Jacobs*, No. C-100796, 2013 WL 454887 (Ohio Ct. App. Feb. 6, 2013). On June 5, 2013, the Ohio Supreme Court denied further review. *Lambda Research, Inc. v. Jacobs*, 988 N.E.2d 579 (Ohio 2013)(Table). From a practical perspective, the victory was somewhat hollow, as Jacobs appears to be judgment-proof. Lambda now seeks to recover its costs and fees in defending against Jacobs' frivolous and retaliatory federal lawsuit, both from Jacobs, and from his presumably more solvent trial attorney.

From the outset of this federal litigation, the Court expressly warned Relator's

1

counsel that he would face sanctions if this suit was found to be frivolous. Ignoring those warnings, Jacobs and his counsel continued to aggressively litigate baseless claims. Eventually, on June 16, 2014, U.S. District Judge William O. Bertelsman filed a thirty-five page Memorandum Opinion and Order in which the Court both granted summary judgment to the Defendants, and granted the Defendants' motion for sanctions against Jacobs and his counsel for filing and pursuing this lawsuit. (Doc. 75). The Court found sanctions to be justified because the Court had "repeatedly admonished both Jacobs and his counsel…that they should dismiss these claims if they were being brought to 'vent some spleen against defendants or if discovery revealed the claims to be without evidentiary support," and because "abundant evidence [exists] that the claims alleged in this case are frivolous and that Jacobs brought this action for one or more improper reasons." (*Id.* at 31). The Court held that sanctions would be imposed "against Jacobs and his counsel, jointly and severally, for Lambda's attorneys' fees and costs in defending against this lawsuit." (*Id.* at 33). Pursuant to that ruling, the Defendants were directed to file a separate motion for fees and costs, in order to provide full briefing on the amount of sanctions to be imposed. (*Id.* at 34).

Relator promptly appealed to the Sixth Circuit, arguing that summary judgment was improper, and that the trial court "erred in awarding sanctions" in five specific ways. *Jacobs v. Lambda Research Inc.*, Case No. 14-3705, Statement of Issues dated July 20, 2014. (Doc. 9 at ¶¶11-15). On May 1, 2015, the Sixth Circuit affirmed the district court's June 16, 2014 opinion in its entirety, in an unpublished decision. Not only did the Sixth Circuit rather emphatically affirm the district court's grant of summary judgment to Lambda, but going further, it stated:

As the district court concluded as to the litigation below, we are inclined to

>conclude that this appeal is both baseless and brought primarily for purposes of harassment, and that Jacob's [appellate] attorney, Patrick Perotti, should be sanctioned as a result. We therefore order Perotti to show cause within 14 days why he should not be sanctioned. Lambda will then have 14 days to file a response.

(Doc. 99 , Exhibit 1 at 7, Opinion filed May 1, 2015).

While the Sixth Circuit appeal was proceeding, Defendants complied with this Court's directive to file a formal motion for attorney fees and costs, initially seeking joint and several sanctions against both Jacobs and his counsel under Rule 11, 28 U.S.C. §1927, and a specific provision of the False Claims Act, 31 U.S.C. §3730(d)(4). (Doc. 78). Jacobs filed a response, to which Defendants filed a reply. (Docs. 85, 88).

On December 11, 2014, Judge Bertelsman granted in part and denied in part the Defendants' first motion for fees, instructing Defendants to renew their motion "in accord with this order, separately calculating the amount of sanctions to be awarded against plaintiff and his counsel." (Doc. 91 at 3-4). "[C]onsistent with its prior Memorandum Opinion and Order (Doc. 75)," the Court reiterated "that sanctions against plaintiff and his counsel are warranted in this matter." However, the Court qualified the legal basis for the award of sanctions, explaining that it would not rely upon Rule 11 based upon the Defendants' failure to satisfy the "safe harbor" provision of that rule. (Doc. 91 at 1). Instead, the Court explained that sanctions against Jacobs alone would be calculated "from the date of the filing of this action" based on the FCA, 31 U.S.C. §3730(d)(4). (Doc. 91 at 2). The Court further stated that it would impose sanctions against Relator's counsel under the separate statutory authority of 28 U.S.C. §1927, but would limit counsel's joint and several liability to "fees and expenses after June 20, 2013." Finally, the Court stated that it would allow supplemental briefing (but no hearing) on the discrete issue of the "reasonableness" of the Defendants' claimed costs and fees. (*Id.*

3

at 2-3).

On January 23, 2015, Defendants filed their supplemental motion, to which Jacobs has filed a response, and Defendants, a reply. (Docs. 92, 96, 97). On March 30, 2015, Judge Bertelsman referred the supplemental motion for fees to the undersigned for a report and recommendation. (Doc. 98).

Defendants' supplemental motion seeks an award of $511,633.58 against Jacobs, and an award of $194,622.89 against his trial counsel. For the reasons that follow, the undersigned recommends that Defendants' motion be granted in part. Specifically, the Court should award a total of $488,371.08 in sanctions against the Relator, Terry Jacobs, of which $171,290.39 could be assessed against trial counsel in joint and several liability.[1]

## II. Analysis

The only issue before the undersigned is the reasonableness of the amount of costs and fees requested by Defendants as a sanction. While the total fees and costs in this case exceed $500,000, for a False Claims Act case litigated extensively over several years, that total is "extremely low." (*See* Doc. 85 at 34, Relator's Memorandum in Opposition to Award of Fees, pointing to low costs as evidence that Relator was not overly aggressive in litigation tactics). Most of the attorney fees were charged by Vorys, Sater, Seymour and Pease, LLP. Defense counsel has provided an affidavit that the amount that was billed was not only "well within the budget that Vorys initially projected for this case, but is by far the lowest figure" that counsel had ever seen for an FCA case litigated through summary judgment. (Doc. 92, Affidavit of Glenn Whitaker, at ¶11). It is

---

[1] This sentence previously recommended that $171,290.39 "should be assessed" against counsel. Literally minutes before the final R&R was to be docketed, however, the docketing clerk received a call from defense counsel notifying the undersigned that the parties had reached a settlement concerning the amount of sanctions as to both trial and appellate counsel.

4

worth noting that Jacobs does not contest any of the hourly billing rates of Vorys attorneys or prior counsel. Indeed, Relator and his counsel freely admit that they "cannot criticize how [defense counsel] litigated this matter. The Defendants prevailed, thereby validating whatever strategy Vorys chose to pursue." (Doc. 96 at 3). Nevertheless, Relator and his counsel seek a reduction of Defendants' claimed fees based on multiple grounds.

In an argument that contradicts Jacobs' earlier statement that it "cannot criticize" Vorys' strategy, Jacobs asserts that Defendants should have filed their summary judgment motion earlier, prior to the close of discovery. Next, turning to the details of the 202 pages of detailed invoices that Lambda produced to support the request for sanctions, Jacobs argues that Vorys employed improper block billing methods, performed work that duplicated work performed by prior defense counsel, and tried to "slip-in" or "slip through" other redacted and/or unrelated time entries. (Doc. 96 at 7-8). Last, Jacobs complains that this Court should not include in any sanctions award a fee for the work that was performed on appeal.

The undersigned disagrees with all of Jacobs' arguments except the last. Therefore, Defendants' supplemental motion for fees should be granted nearly in full, reflecting a modest reduction for the fees accrued in the ongoing Sixth Circuit proceedings.

### A. Alleged Duty to Mitigate

Relator first argues that the full amount of fees should not be awarded to Defendants because Defendants failed to "mitigate" the amount of attorney fees incurred, to the extent that Defendants could have filed their motion for summary judgment on an earlier date based upon a single procedural argument, rather than

5

completing discovery and filing the motion based upon both the procedural issue and, alternatively, on the merits of Relator's claims. Relator's argument presupposes that a defendant seeking the imposition of fees under the FCA (as to Jacobs) or 28 U.S.C. §1927 (as to Relator's counsel) is required to "mitigate" or minimize the amount of attorney fees incurred by filing a dispositive motion as soon it becomes aware of *any* legal basis for filing such a motion. The underlying authority cited for this proposition is *Danvers v. Danvers*, 959 F.2d 601, 605 (6th Cir. 1992), a case in which an award of fees under Rule 11 was reversed and remanded based on the defense counsel's failure to explain why she proceeded through discovery without first filing a motion to dismiss when there were obvious and meritorious grounds on which to base such a motion. *See also Ullmann v. Olwine, Connelly, Chase, O'Donnell & Weyher*, 123 F.R.D. 559, 653-64 (S.D. Ohio 1987)(suggesting in dictum that a duty to mitigate might exist under §1927, but finding all hours reasonable).

Relator's citation to *Danvers* misses the mark, even assuming that *Danvers* should be applied to 28 U.S.C. §1927.[2] *Danvers* held that full fees should not be awarded because counsel failed to explain "why Defendant did not even file a motion to dismiss" before proceeding with the expense of discovery. *Id.* Unlike in *Danvers*, in this case the Defendants tried valiantly to quickly resolve this litigation, including by filing a motion to dismiss.[3] However, Judge Bertelsman denied that motion and directed the parties to proceed with discovery. Despite that denial, the Court cautioned Jacobs frankly both during oral argument (twice) and again in its written order that "should it become apparent that the claims herein are without evidentiary support or are being

---

[2] The *Danvers* court itself distinguished an award under Rule 11 from case law involving full awards of attorney fees under 28 U.S.C. §1927. *Id.* at 605.
[3] The motion to dismiss was filed by Defendants' first counsel of record.

pursued for an improper purpose, relator is under a duty to dismiss them voluntarily." (See Doc. 24 at 1-2). Thus, Defendants here had no choice but to incur the expense of discovery.

Jacobs attempts to draw an analogy to *Danvers* by pointing out that Judge Bertelsman ultimately accepted the first argument contained in Defendants' motion for summary judgment, holding that Jacobs' FCA claims were subject to dismissal based upon Jacobs' breach of the seal required under the FCA, through disclosure of the litigation to his former employer and others. Defendants discovered that disclosure during Relator's February 8, 2013 deposition. Jacobs now argues that no fees should be awarded for work performed beyond that deposition date, because as of that date, "the Defendants had all of the testimony that they needed" to win summary judgment. Relator therefore contends that "[o]n February 9, 2013, Defendants could have filed a one-page motion for summary judgment (which is the amount of space devoted to the breach of the seal argument in the 41-page motion that they ultimately filed)." (Doc. 96 at 3). Rather than choosing that hypothetical strategy, Defendants continued to engage in discovery through the June 21, 2013 amended deadline, and filed their motion thereafter on September 3, 2013. (*See* Docs. 44, 51).

The undersigned can find no fault in Defendants' choice to wait to file their summary judgment motion until the close of discovery in order to include all arguments for judgment in a single motion, even assuming that a "mitigation" defense would apply in this context.[4] Defendants' litigation tactics were beyond reproach, and evidence numerous attempts to persuade Relator and his counsel to drop their baseless suit. For

---

[4] It hardly bears pointing out that neither *Danvers* nor any other case cited by Jacobs supports the notion that the principle of mitigation requires a party to immediately end discovery and/or halt other work on the case in order to file a dispositive motion the precise moment that the party discovers a potentially dispositive argument, when that moment occurs late in discovery.

7

example, at the time Vorys took over from prior defense counsel in 2012, new counsel explained to Relator's counsel that Jacobs could expect Defendants to follow-up on the Court's prior admonitions, and to pursue sanctions if Lambda was successful on summary judgment. Lambda reiterated that position throughout this litigation. (Doc. 92-1 at ¶12).

Lambda argues persuasively that based on the date that it learned of the Relator's seal violation – more than a year into the discovery period and just a few months prior to the discovery cut-off – it was eminently reasonable to wait until the conclusion of discovery to file a single dispositive motion. Motions for summary judgment are typically filed at the conclusion of discovery, not mid-stream. In the experience of the undersigned, a motion filed mid-way through the discovery period may well meet with disapproval on grounds that additional discovery is needed. Based upon his repeated demands for additional discovery,[5] it is highly likely that Relator would have opposed any such motion in part by arguing that the discovery period was still open, and/or by moving for additional discovery under Rule 56(f). Thus, if Defendants had filed a "one-page motion" on February 9, 2013 as Relator now claims they should have,[6] there is no guarantee that the trial court would have accepted the ultimately-successful argument at that time. While courts tend to appreciate a succinct argument, the likelihood of a prematurely filed one-page dispositive motion meeting with instant success strains credulity.

Additionally, as Lambda points out, until now Relator has argued vigorously that

---

[5]Defendants expended a "substantial amount" of time responding to Jacobs' "efforts to protract the proceedings through unreasonable and immaterial discovery." (Doc. 92-1 at ¶13).

[6]Aside from the fact that a defendant should not be required to file multiple motions for summary judgment, the notion that Defendants could have filed a winning one-page motion for summary judgment *the day after Jacobs' deposition* – before that deposition was transcribed or filed – is ridiculous.

8

he did not violate the FCA seal provisions and that the trial court's decision to the contrary was "grossly inconsistent with the purpose of the False Claims Act and has no basis at law." (Corrected Merit Brief of Appellant/Relator, Case No. 14-3705, Doc. 30 at 50). In fact, the vast majority of Judge Bertelsman's 35-page opinion granting summary judgment focused on the lack of substantive merit to the Relator's claims, and not the procedural issue of the Relator's violation of the seal provision. Waiting until the close of discovery to file a single meritorious summary judgment motion that includes all relevant arguments is vastly preferable to the filing of multiple, piecemeal motions. *See, e.g., Spengler v. Worthington Cylinders*, 514 F.Supp.2d 1011, 1021 (S.D. Ohio 2007)("Parties are generally expected to set forth all their arguments in support of summary judgment in a single dispositive motion; piecemeal litigation at the summary-judgment stage is disfavored."). From a practical standpoint, if either this Court or the Sixth Circuit had accepted Relator's contention that the seal was not violated, Lambda still would have needed to finish off its nearly-completed discovery in order to file a new motion for summary judgment on the merits.

Last, a judgment on the breach of the seal provision would have only disqualified Jacobs as Relator. At least in theory, that result could have left Lambda open to suit by the Government on the merits of the same claim. *See United States ex rel. Summers v. LHC Group, Inc.*, 623 F.3d 287, 299 (6th Cir. 2010). From that perspective, the completion of discovery and the inclusion of arguments on the merits of the Relator's claims was the only reasonable course of action.

The undersigned concludes that none of the post-February 8, 2013 litigation expenses should be reduced based on any "failure to mitigate," assuming such a duty exists. Jacobs' own conduct continually prolonged this litigation and increased

9

Lambda's reasonable attorney fees.  When, during discovery, Jacobs failed to depose any Navy employees in support of his claim that Lambda had defrauded the Navy, Lambda sent Relator's counsel a letter to remind him of the Court's three prior warnings, reiterating that if counsel failed to dismiss the lawsuit voluntarily, Lambda would seek sanctions from him directly.  (Doc. 52-12).  As the Sixth Circuit pointed out, instead of dismissing, counsel filed a motion asking this Court to allow Jacobs to inspect and videotape Lambda's equipment and processes.  This Court "was understandably concerned about allowing Jacobs – a 'known thief,' who had stolen Lambda's trade secrets in the past – to access Lambda's facility, where he might steal more.  Hence the court denied Jacobs['] motion."  (Doc. 99-1 at 5).  Jacobs' motion not only required Defendants to file additional briefs, but also required a further extension of the dispositive motion deadline.  It is hypocrisy for Jacobs to criticize Defendants for incurring such expenses in light of Jacobs' continual refusal to dismiss his lawsuit despite repeated warnings and requests.

### B. Block Billing Issue

Jacobs next argues that the amount of attorney fees sought by Defendants should be reduced based upon the fact that defense counsel's itemized statements reflect multiple instances of "block billing," referring to the occasions on which counsel has grouped together more than one task in a single billing entry.  Relator selectively quotes from *Gibson v. Scott*, 2:12-cv-1128, 2014 WL 661716 (S.D. Ohio Feb. 19, 2014), wherein the court observed:  "Because block billing does not provide detail as to how much time was spent on each particular task Plaintiff's counsel's use of block billing makes it inherently difficult to determine the reasonableness of his billing entries."  *Id.* at *5.  However, *Gibson* was careful to explain that "block billing is not *per se* improper as

10

the underlying question is whether the fee is reasonable." *Id.* at *4 (citing *Pittsburgh & Conneaut Dock Co. v. Director, Office of Workers' Comp. Programs*, 473 F.3d 253, 273 (6th Cir. 2007)(noting that other "circuits have rejected block-billing objections to fee awards in a number of contexts.")). *Gibson* explained that the court's problem with block-billing on the record presented was that counsel had worked on the case by himself, without any administrative or paralegal support staff, and had included in his time descriptions multiple clerical and secretarial tasks such as organizing the file, copying documents, and obtaining notebooks and dividers. *Id.* It was not clear just how many hours were included for the purely clerical tasks, but other reasons – not relevant to the instant case – also supported a significant reduction of the fee award in *Gibson*.

Despite these differences, Jacobs insinuates that block-billing is always improper, arguing that Vorys was "alerted to the problem with its block billing practices in *Kendall Holdings, Ltd. v. Eden Cryogenics, LLC*, Case No. 2:08-cv-390 (S.D. Ohio Mar. 4, 2014), a case in which the court justified a 10% reduction of the fee award based upon a combination of redacted entries, block billing, and "overlap incurred in the pass-off of this case." (Doc. 270 at 30). Based on what Jacobs describes as a prior "admonishment" directed to Vorys in *Kendall Holdings,* Jacobs seeks an even greater (20%) reduction for the block billing practices employed in this case.

Jacobs is particularly critical of a 5.7 hour entry on June 19, 2013 with the following description:

> Telephone conference with Mr. Ravindranath and Ms. Strakowsky regarding revisions to declaration of Mr. Ravindranath. Revise and edit Ravindranath declaration and draft email to Ms. Strakowsky regarding same. Review and respond to Ms. Strakowsky attaching executed Gosnell declaration. E-mail Mr. Prevey regarding case status, receipt of executed Gosnell declaration, and plans for opposing DeRoche's demand for facility inspection. Conference with Mr. Bronson regarding case status.

11

> Review email from Mr. Prevey regarding case status and preparation of summary judgment motion. Review email from Mr. DeRoche outlining Jacobs' position with respect to notice of inspection. Conference with Mr. DeRoche regarding objections to Jacobs' notice of inspection, Lambda's intent to provide supplemental document production, and upcoming hearing with Magistrate Judge Bowman.

(Doc. 89 at 123).[7] Jacobs also claims that one attorney, Mr. Stucky, "block billed" at the rate of $250 per hour "for clerical work." (Doc. 96 at 6). As an example, Jacobs suggests that counsel billed 2.9 hours on October 6, 2014 for filing the "foregoing papers on ECF system." Jacobs criticizes three more entries, dated December 20, 2012, July 15, 2013, and September 2, 2013, for similar reasons. Referencing the latter entries, Jacobs concludes: "Aside from the fact that no pleading takes 2.9 hours to file[,] determining the 'formatting requirements' for a summary judgment brief could never take 5.5 hours[,] and it is not credible to claim more than 3 hours to call about appearance of counsel, moreover, all of these matters could have been handled by an administrative assistant.... " (*Id.*).

As discussed in *Gibson* and above, Sixth Circuit case law makes abundantly clear that there is <u>no</u> prohibition against "block billing" or attorney time entries that describe the completion of more than one task. *See also Armstrong v. Receivables Perf. Mgmt.*, LLC, 2012 WL 404893 at *3 (S.D. Ohio, Feb. 8, 2012)(holding that "block-billed entries are not improper in the attorney fee context," citing *Pittsburgh & Conneaut Dock Co., supra*); *Williamson v. Recovery Ltd. P'ship*, 2013 WL 3222428 at *11 (S.D. Ohio June 25, 2013)(collecting cases and holding that "the use of block billing in and of itself is not improper in the attorney fee context"). Plaintiff also has mischaracterized

---

[7]Defense counsel's detailed billing records were filed under seal due to their confidential nature. The inclusion of selective short quotations in this Report & Recommendation is not intended to disturb the propriety of keeping the remainder of those records under seal.

*Kendall Holdings,* which involved an award of fees to a successful plaintiff who proved that defendants had misappropriated its trade secrets. The *Kendall Holdings* court did not "admonish" Vorys for its billing practices or suggest that block billing entries are categorically prohibited; rather, it simply acknowledged the challenges inherent to judicial review of such entries. On the record presented in *Kendall Holdings*, the court exercised its judicial discretion to reduce the claimed fee by 10% in determining the "reasonable" fee to be awarded. Despite concluding that Vorys' overall fees should be reduced, the court was careful not to disparage counsel despite broadly accepting three reasons presented by the defendants for a reduction of fees. (*See id.* at 29-30, noting the court's review of Vorys' records indicates that any "overlap amounts to a very small number" of hours due to Vorys' need to get up to speed "through no fault of its own," that redacted time entries account for no more than "1 in every 25 entries," and reflect only "occasional usage" and a "relatively small number" of block-billed entries).

Turning specifically to the five entries that Jacobs complains of in this case, the undersigned finds the Relator's descriptions of those "block billing" entries to be misleading. While Jacobs indignantly asserts that the entries are "clearly padded" because "no pleading takes 2.9 hours to file," and it is "not credible" to claim 5.5 hours for determining formatting, or 3 hours to call about the appearance of counsel, those references omit most of the description of tasks listed for the respective time entries. (Doc. 96 at 6-7). For example, the July 15, 2013 entry by Mr. Stucky reflects that 5.5 hours was not spent merely on "formatting" as Jacobs implies. Instead, Mr. Stucky described time spent on substantive work:

> Final revisions and edits to memorandum in opposition to Jacobs' motion to compel Rule 34 inspection. Proofread and cite-check memorandum. Revise and edit affidavit of Mr. Prevey to be filed with opposition

13

> memorandum. Multiple emails to client regarding preparation of opposition memorandum and affidavit of Mr. Prevey. Review Jacobs deposition and compile portions of deposition to be used as an exhibit to opposition memorandum. Preparation of additional exhibits. File memorandum with the court and email client regarding as-filed opposition memorandum.

(Doc. 89 at 132). Similarly, Mr. Stucky did not spend over 3 hours calling about the appearance of counsel on December 20, 2012. The full time entry reflects:

> Review email from client regarding deposition timing and case strategy. Preparation of motion for amended calendar order. Contact Southern District clerk regarding clarification of docket to properly reflect defendants' counsel. Review and respond to email from Mr. DeRoche requesting Lambda's technical proposal for contract N68335-02-C-0384. Review documents as relevant to Mr. DeRoche's request.

(Doc. 89 at 73-74). Unsurprisingly, the October 6. 2014 entry also does not indicate that it took Mr. Stucky 2.9 hours merely to "file" a document. Instead, that entry also shows mostly substantive work:

> Revise and edit reply memorandum in light of comments from Mr. Bronson. Final revisions and edits to reply memorandum. Preparation of exhibit and notice of filing exhibit under seal. File forgoing papers on ECF system and draft email to Mr. Jacobs' counsel providing courtesy copy of exhibit filed under seal.

(Doc. 94 at 11). Thus, Jacobs' contention that Mr. Stucky billed for a substantial amount of "clerical work" is inaccurate. In context, the Court assumes that the filing of the reply memorandum would have consumed no more than ten minutes of the recorded time.

Lambda points out that, to the extent that any of the tasks can be considered "clerical," it is undisputed that Vorys wrote off more than 140 hours of time, a voluntary reduction of nearly 10%. (See Doc. 92-1 at ¶17, Whitaker Affidavit, reflecting the write-off of just over 140 hours billed to Lambda December 2014). Additionally, although the billing rates of three Vorys attorneys increased over the years of this litigation, Vorys

14

continued to bill those attorneys at their 2012 billing rates. (Doc. 92-1 at ¶19). The undersigned agrees that the prudent exercise of such billing judgment easily offsets the small fraction of tasks that are challenged by Jacobs as "clerical." Therefore, notwithstanding the fractional amount of time in five block-billed entries that might be viewed as administrative, the undersigned finds no cause for further reduction.

### C. Transition Period Entries

Although the bulk of the legal defense work was performed by the Vorys firm, from July 15, 2011 through June 27, 2012, Defendants were represented by Gottesman & Associates. Jacobs now claims that "[m]uch of the $43,045.46 that [was] billed for the period June 20, 2012 through July 31, 2012 involved Vorys duplicating work." (Doc. 96 at 7). Jacobs criticizes 20 specific time entries during the referenced period as unnecessarily "duplicative," again relying on the across-the-board reduction applied in *Kendall Holdings,* which was based in part on duplicative work performed due to a change in counsel.

Although Defendants do not directly respond to this argument, the undersigned has closely examined the twenty challenged time entries and does not agree that all of the entries were inappropriately included in Defendants' request for sanctions. First, while Jacobs suggests that "much of the $43,045.46" was duplicative for the period in question, the twenty disputed time entries reflect 64.09 attorney hours, totaling $16,101.00.[8] In considering that relatively modest total (3.1% of the total fee sought), the undersigned again considers that Defendants voluntarily wrote off 140 hours, which presumably includes at least some of the entries that Jacobs now challenges as

---

[8]The total includes 2 entries (4 hours) by Glenn Whitaker, 7 entries (37.8 hours) by Aaron Stucky, 5 entries (8.7 hours) by Michael Bronson, and 6 entries (13.59 hours) by Nathan Colvin.

15

"duplicative." Moreover, Jacobs deliberately truncates the description of five challenged entries (totaling more than 25 of the challenged 64 hours) to omit descriptions of other non-duplicative tasks included in those same entries, involving ongoing strategy and case management.[9] In the discretion and judgment of the undersigned, the minimally duplicative fees might warrant – at most - a reduction of $8,000, reflecting approximately half of the fees challenged as duplicative. However, given Jacobs' penchant for continuing misleading attacks on the billing practices of defense counsel and Defendants' prior voluntary reductions, the undersigned declines to recommend any further reduction.

### D. Redacted and/or Unrelated Time Entries

Jacobs further criticizes defense counsel for including "time for matters which have nothing to do with this case," pointing to March 24, March 25, 2014 time entries, as well as several entries from December 6-December 12, 2012 (totaling 4 hours) relating to attorney malpractice research by attorney Angela Neyer. (Doc. 96 at 8-9). Having reviewed the March 24 and March 25, 2014 time entries, the undersigned does not agree that those entries are wholly unrelated to this litigation. They clearly were related to Lambda's response to online attacks against its LPB technology, which defendants reasonably believed was related to Jacobs' retaliatory activities and Lambda's defense. Moreover, Defendants specifically included in its 140 hour write-off all hours spent by attorney Angela Neyer, including the 4 hours Ms. Neyer spent on attorney malpractice research. (Doc. 92-1 at ¶¶17-18).

Jacobs additionally asserts that Vorys should not be compensated for three

---

[9]The five records include 2.5 and 6.4 hour entries made on July 3, 7.85 hours on July 4, 2.2 hours on July 6, and 6.1 hours recorded on July 9, 2012.

redacted time entries on October 2, 3, and 14, 2013, totaling 9.7 hours. The entries about which Jacobs complains are only partially redacted. As with block billing, there is no "bright line" rule that prohibits a fee award that includes just three partially redacted entries out of 202 pages of records, particularly where, as here, this Court can discern that the hours were reasonably expended in connection with this litigation. *Contrast Kendall*, *supra* at 30 (citing a total of 70 entries "with partial or full redactions" as one of several global reasons for a 10% reduction overall).

### E. Recovery for Time Billed On Appeal

Finally, Relator argues that this Court should not include in any sanctions award attorney fees that were incurred during the Relator's recent appeal to the Sixth Circuit. *See In re Cardizem CD Antitrust Litigation*, 481 F.3d 355, 362 (6th Cir. 2007)(stating that the case law "generally" holds that sanctions for conduct on appeal should be determined by the appellate court, collecting cases). Lambda acknowledges that it is seeking a fee award in the Sixth Circuit pursuant to Rule 38. After Lambda filed its reply memorandum in this Court, the Sixth Circuit issued its opinion requiring Relator's counsel to show cause "why he should not be sanctioned" under both 28 U.S.C. §1927 and Rule 38 of the Federal Rules of Appellate Procedure for filing a frivolous appeal. In light of the ongoing review by the Sixth Circuit, the amount of $23,262,.50, representing the costs and fees incurred on appeal, should be subtracted from the total sanction award sought by Lambda from this Court.

### F. Costs

Although Defendants' supplemental motion states that Lambda incurred total costs of $8,146.58 in this matter, (Doc. 92-1 at ¶20), including electronic document production and storage, photocopying expenses, FedEx and courier charges, online

17

legal research, and deposition expenses, most of those costs were incurred prior to the date that Judge Bertelsman concluded that Jacobs' counsel should be held responsible. From July 2013 through December 2014, which includes the time period for which the Court has determined that trial counsel should be held jointly and severally liable for fees and costs, Lambda represents that its costs totaled $1,717.39. (Doc. 92-1 at ¶¶20, 24). Therefore, while Jacobs should be held liable for the full amount of costs ($8,146.58),[10] his trial attorney may be held jointly and severally liable for only $1,717.39 of that total.

On the other hand, Defendants' reply memorandum clarifies that, to the extent that this Court agrees that costs and fees on appeal should not be included in the sanctions awarded by this Court, the total award of sanctions being sought against Jacobs *including costs* is $488,371.08, with $171,290.39 being sought against trial counsel. (Doc. 97 at 1, n.1). Based on this representation, the undersigned finds no need to separately designate the portion of the sanctions award attributed to costs.

### III. Conclusion and Recommendation

For the reasons discussed above, IT IS RECOMMENDED THAT Defendants' supplemental motion for an award of attorneys' fees and costs (Doc. 92) be GRANTED in part, and that the Court enter a judgment awarding $488,371.08 in fees and costs against the Relator, Terry Jacobs under the FCA. Based upon today's verbal representation by defense counsel that the parties have resolved the portion of their dispute concerning an award of sanctions against trial counsel, the undersigned declines to recommend any joint and several award against counsel.

---

[10]Defendants' reply brief represents the total costs as $9,648.58. The undersigned assumes that the discrepancy between the amounts listed in the supplemental motion and the reply brief may be attributed to costs incurred on appeal, which are not recoverable from this Court.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA, ex rel.
TERRY JACOBS,

      Plaintiff,

  v.

LAMBDA RESEARCH, INC., et al.,

      Defendants.

Case No. 1:10-cv-536
Bertelsman, J.
Bowman, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).